IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| EURKERT BOARDLEY AND SENTA BOARDLEY<br><br>Plaintiffs,<br><br>v.<br><br>HOUSEHOLD FINANCE CORPORATION III AND HSBC HOLDINGS INC., PLC<br><br>Defendants. | Civil Action No. 8:12-cv-03009-JFM |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants, Household Finance Corporation III and HSBC Holdings Inc., PLC. (collectively, "Household"), submit this reply brief in further support of Defendants' motion pursuant to Fed. R .Civ. P. 12(b)(6) to dismiss the Amended Complaint filed by Plaintiffs, Eurkert Boardley and Senta Boardley ("Plaintiffs"), and to address certain misstatements of law in Plaintiffs' Opposition.[1]

**I.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER RESPA.**

    **A.     Plaintiffs Cannot Pursue a Private Right of Action Under § 2609.**

In their Opposition, Plaintiffs first ask this Court to go against the weight of authority and to find a private right of action under § 2609 of RESPA relating to escrow accounts. (Opp. at 2-5.) However, Plaintiffs wholly fail to support their naked assertion that "there is legislative history indicating the creation of remedies" for § 2609 violations and that a private right of action "is implied for § 2609." (Opp. at 3.) Nowhere do Plaintiffs cite to any

---

[1]    In their Opposition, Plaintiffs state that they do not Household's request for dismissal of Count "IV" (Violation of RICO).  (Pl. Opposition ("Opp.") at 15.)  This claim should be dismissed with prejudice.

legislative history supporting their argument. To the contrary, as numerous other courts have concluded, there is no private right of action under § 2609, because there is no evidence of any congressional intent to create a private remedy. See, e.g., Clayton v. Raleigh Fed. Sav. Bank, 194 B.R. 793 (M.D.N.C. 1996) (explaining that two Circuit Courts and several district courts have found no private right of action, and that the opinions of these courts are "clearly more persuasive and better reasoned than the brief treatment afforded by the 6th Circuit" in Vega v. First Fed. Sav. & Loan Assoc. of Detroit, 622 F.2d 918, 925 n.8 (6th Cir. 1980)); see Sarsfield v. Citimortgage, Inc., 667 F. Supp. 2d 461, 467 (M.D. Pa. 2009) (stating majority of circuits have determined that there is no private right of action for violations of § 2609 and collecting cases). The court in Clayton opined that the most important of the four factors in the Cort v. Ash test is whether Congress intended to create a private remedy; but, whereas "other parts of [RESPA] do provide for private remedies, [ ] Section 10 (12 U.S.C. § 2609(a)) does not, and there is a dearth of legislative history indicating that a private right of action was intended." Id. at 796-97 (citing State of Louisiana v. Litton Mortgage Co., 50 F.3d 1298 (5th Cir. 1995)). The Clayton court observed correctly that "[t]here is no reasoned basis for finding a legislative intent to create a private remedy." Id. Indeed, the case cited by Plaintiffs to support their argument – Allison v. Liberty Savings, 695 F.2d 1086 (7th Cir. 1982) – actually did not find any private right of action created by § 2609.

In the absence of any congressional intent to create such a remedy, Plaintiffs' claims pursuant to § 2609 must be dismissed.

      **B.**    **Plaintiffs Cannot Assert a Claim For Violation of § 2605(k), Because it Was Not in Effect at The Time of The Alleged Violation.**

Plaintiffs next argue in their Opposition – although alleged nowhere in the Amended Complaint – that the facts set forth in the Amended Complaint establish an alleged

violation of another section of RESPA: § 2605(k)(1)(C). (Opp. at 5.) This provision states as follows:

> **(k)     Servicer prohibitions**
>
> **(1)     In general**
>
> A servicer of a federally related mortgage shall not ---
>
> *     *     *
>
> (C)  fail to take timely action to respond to a borrower's request to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, **or other standard servicer's duties**.

12 U.S.C. § 2605(k)(1)(C) (emphasis added). Plaintiffs contend that one of the "other standard servicer's duties" is "servicing," which is defined elsewhere in RESPA to include "receiving . . . amounts for escrow accounts described in section 2609 of this title." (Opp. at 5.) Presumably, Plaintiffs would base such a claim on their allegation that Household failed to respond to Plaintiffs' letters dated December 2010 (which, as discussed below, was never received by Household) and January 2011, in which they requested to manage their own escrow account and claimed there were discrepancies in the escrow account. (See A.C. ¶¶ 64-68.)

Based on the allegations in the Amended Complaint, Plaintiffs' supposed claim under § 2605(k) too must fail. Section 2605(k) was added to RESPA by the Dodd–Frank Wall Street Reform and Consumer Act, Pub.L. 111–203, 124 Stat. 1376 (2010) ("Dodd–Frank Act"), passed in 2010. The Dodd–Frank Act's revisions to RESPA – including § 2605(k) – would become effective on the date on which the final regulations implementing such section are issued, or, if no final regulations have been issued, "18 months after the designated transfer date." Dodd-Frank Act § 1400(c), 124 Stat. at 2136; see, e.g., Bever v. Cal–Western Reconveyance Corp., 2012 WL 2522563, at *3-4 (E.D. Cal. June 28, 2012); Williams v. Wells

- 3 -

Fargo Bank, 2011 U.S. Dist. LEXIS 105513 at *14–19 (S.D. Fla. Sept. 19, 2011) (finding subsections (k)-(m) do not become effective until final implementing regulations are passed, or 18 months after a designated "transfer date"). The designated transfer date was July 21, 2011, making the latest effective date January 21, 2013. Bates v. JPMorgan Chase Bank, N.A., No. 12-cv-43, 2012 WL 3727534, *4 (M.D. Ga. Aug. 27, 2012) ("Therefore, § 2605(k) of RESPA becomes effective when the final regulations implementing it are issued or on January 21, 2013—whichever is earlier."); Patton v. Ocwen Loan Servicing, 2011 U.S. Dist. LEXIS 82789 at *13 n. 6 (M.D. Fla. July 28, 2011); see also 76 Fed. Reg. 77,766-01 (Dec. 14, 2011) (stating Dodd–Frank Act requires CFPB to publish, in final form, certain mortgage servicing rules by January 21, 2013). Since no final regulations were issued implementing § 2605(k) of RESPA as of January 21, 2013 (18 months after the transfer date), it appears that section first became effective on January 21, 2013. See, e.g., Bates, 2012 WL 3727534 at *4.

Consequently, § 2605(k) was not in effect as of the date of the alleged violations in the Amended Complaint. Plaintiff's RESPA claims allegedly stemming from this subsection, therefore, cannot survive this motion to dismiss.

### C. Plaintiffs Fail to Identify Any QWR To Which Household Failed to Respond.

Plaintiffs conclusorily allege "numerous qualified written requests regarding their account" to which Defendants failed to adequately respond, but specifically identify only two such requests. (A.C. ¶ 75.) As to the December 21, 2010 letter, which is attached as Exhibit "L" to the Amended Complaint, it is clear that Household never received this correspondence and thus cannot be held responsible for failing to respond. See § 2605(e)(1)(A) (a loan servicer must respond to a borrower's servicing inquiries when that servicer "*receives* a qualified written request") (emphasis added). Plaintiffs' Opposition does not seriously refute this.

Plaintiffs now focus solely on the second letter dated January 14, 2011 as the basis for their claim. However, that letter also does not qualify as a QWR under § 2605, because it simply informed Household that Plaintiffs "will" manage their own escrow account and alleges that Household's records reflect certain discrepancies in the amounts paid into the escrow account and how they were applied. (A.C., Exhibit "O".) The vague statements in this letter do not sufficiently state a reason for Plaintiffs' belief that the account was in error – such as providing proof of any of the alleged payments that allegedly were not properly credited. Rather, the letter essentially constitutes Plaintiffs' demand to manage their own escrow account. Plaintiffs now concede, in any event, that Household did, in fact, respond to this letter by correspondence dated January 24, 2011 (Exhibit "Q" to the Opposition). As stated in the letter identified as Exhibit "Q," Household informed Plaintiffs that it could not grant their request to cancel their escrow account due to the negative escrow balance at that time of negative $9,765.25. Nothing further was required to respond to Plaintiffs' "demand" to manage their own escrow account, and Plaintiffs have, therefore, failed to identify any RESPA violation.

## II. PLAINTIFFS CANNOT STATE A TILA CLAIM RELATING TO THE SERVICING OF THEIR ESCROW ACCOUNT.

Plaintiffs are simply mistaken in their attempt to state a claim under TILA relating to the servicing of their escrow account. Tellingly, Plaintiffs fail to identify a single case in which a Court has applied the identified sections of TILA and Regulation Z to the administration or servicing of escrow accounts. That is because the administration of escrow accounts are generally governed by RESPA, except as otherwise provided in TILA or its implementing regulations. See 15 U.S.C. § 1639d. Although Plaintiffs suggest that § 1026.36(c)(1)(iii) of Regulation Z falls within this exception (Opp. at 9), there is nothing in the plain language of this regulation referencing escrow accounts and nothing in the regulatory history that suggests that

this provision relates to escrow accounts.  To the contrary, this subpart was intended to address servicing practices which resulted in the delayed issuance of payoff statements upon a borrower's request.  See generally 73 F.R. 44522-01 at 44568-71.  The Official Staff Interpretations to subpart (c)(1)(iii) also support this conclusion, stating that "[t]he payoff statement must be provided to the consumer … within a reasonable time after the request" and that "payoff statements must be accurate." Id. at 44614.   Plaintiffs offer nothing to refute this, other than simply trying to analogize the purpose behind a consumer's request for a payoff statement and a request for information on escrow accounts.  Without more, however, Plaintiffs fail to establish any recognized cause of action pursuant to § 1026.36(c)(1)(iii) of Regulation Z with respect to their alleged request for escrow statements.

Even assuming Plaintiffs could state a claim pursuant to TILA relating to their alleged requests for escrow statements beginning in December 2010, any such claim under TILA would be time-barred by the relevant one (1) year limitations period.  See 15 U.S.C. § 1640(e). To get around this, Plaintiffs argue that the alleged violations are "still occurring today," but they offer absolutely no case law to support the proposition that TILA violations could be continuing in nature and, thus, repeatedly "re-starting" the accrual of the limitations period.  Plaintiffs also offer no explanation as to why they failed to pursue their claims within one year after they allegedly first requested a copy of an escrow statement and failed to receive one.  For these reasons, Plaintiffs' claims under TILA should be dismissed with prejudice.

### III.   PLAINTIFFS' FHA, ECOA AND CIVIL RIGHTS ACT CLAIMS ARE TIME BARRED.

Plaintiffs' claims under ECOA (Count "IV"), the Civil Rights Act (Count "XV") and FHA (Count "XIV"), are each related to Plaintiffs' contentions that Defendants implemented a discriminatory pricing policy against Plaintiffs in the origination of their loan – which closed in

June 2007.  (See A.C. ¶¶ 46-52).  It is clear from the face of the Amended Complaint that these claims are untimely pursuant to the two-year statute of limitation applicable to claims under both the FHA and the ECOA and the three-year statute of limitation applicable to claims under the Civil Rights Act.  In Section III of their Opposition, Plaintiffs attempt to circumvent this inevitable conclusion by asserting that the limitations periods for these claims should be tolled by Household's alleged conduct.  (Opp. at 14-15.)  The cases cited by Plaintiffs for this proposition, however, have nothing to do with the FHA, ECOA or the Civil Rights Act, but instead relate to claims under RESPA, TILA and Maryland common law.  Plaintiffs do not identify any precedent at all to support the notion that the statutory limitations periods for FHA, ECOA and Civil Rights Act claims can be, or should be, tolled here.  Plaintiffs also plead no facts that would support the application of any equitable tolling doctrine to these alleged claims.  Accordingly, Counts IV, "XIV" and "XV" should be dismissed with prejudice.

## IV. PLAINTIFFS' STATE LAW CLAIMS ARE DEFICIENT AS A MATTER OF LAW.

### A. Claims Relating to The Original Loan Transaction And Alleged Misrepresentations Made Prior to October 10, 2009 Are Time-Barred.

Each of Plaintiffs' state law claims is based almost entirely on Plaintiffs' alleged interactions with certain Household representatives in the origination of the mortgage loan in or around June 2007, and Plaintiffs' claim that they were induced to enter the loan based on alleged promises about future restructurings or refinancings and that their payments would eventually be lowered.  (See, e.g., A.C. ¶¶ 130-132; 136-137; 139-141; 146-147.)  These state law claims that relate to the 2007 loan transaction as well as communications taking place prior to October 10, 2009 – three years prior to the filing of this action on October 10, 2012 – are all time-barred by the three year limitations period provided for under Maryland law.  See Md. Code Ann., Cts. & Jud. Proc. § 5-101.

Plaintiffs appear to contend that the limitations period on these claims should be equitably tolled, because Household allegedly "kept the Boardleys from knowing that they had been swindled until long after the original closing. . . ." (Opp. at 15.) Under Maryland law, equitable tolling may apply where the defendant concealed facts concerning the plaintiff's cause of action, such that the cause of action "shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence, **should have discovered the fraud**." Md. Code, Courts & Judicial Proceedings Art., § 5-203 (emphasis added). A party's diligence is "crucial in establishing his right to equitable tolling due to fraudulent concealment." Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., 495 Fed. Appx. 350, *4 (4th Cir. 2012).

> [N]othing. . . excuses a negligent plaintiff from the diligence requirement—not even if a fraud is allegedly well-disguised. Fraud by its nature is something perpetrators take pains to disguise, and plaintiffs' notion that allegedly concealed fraud excuses the need for any diligence on the plaintiffs' part would permit statutory periods to be tolled indefinitely, even when plaintiffs could reasonably be expected to bring suit.

Id. (holding that plaintiffs' lack of diligence was fatal to their tolling arguments where plaintiffs' suspicions should have been—and indeed were—raised, both as to underlying claims and defendant's trustworthiness) (citation omitted). "Ignorance in the face of facts discoverable upon simple inquiry does not suffice for purposes of the fraudulent concealment doctrine." Bausch v. Philatelic Leasing, Ltd., 34 F.3d 1066, *6 (4th Cir. 1994) (citations omitted).

In this case, Plaintiffs fail to demonstrate a basis for equitable tolling. Plaintiffs' own allegations in the Amended Complaint demonstrate that, by August 2008, Household representatives allegedly had refused Plaintiffs' attempts to refinance or restructure the Loan. (See A.C. ¶ 15) ("…Candace Geter told Mr. Boardley that it was too early to refinance or restructure their loan"); and A.C. ¶ 18 ("Rather than lower the payments as promised, a representative of Defendants offered a deferment plan."). By this time, Plaintiffs knew they

could not afford the loan, and Plaintiffs knew, or should have known with the exercise of ordinary diligence, that contrary to the earlier alleged representation by Ms. Geter, the monthly payment amount had <u>not</u> been lowered after the expiration of an initial six month period on the loan, and the allegedly promised refinancing was <u>not</u> forthcoming.  (A.C. ¶¶ 16-17.)  No later than August 2008, therefore, Plaintiffs either knew, or with the exercise of ordinary diligence, should have known of the facts underlying their potential cause of action against Household.  Plaintiffs' failure to exercise due diligence within three years after receiving inquiry notice of the actionable wrongs precludes them from demonstrating a basis for fraudulent concealment. <u>See</u> <u>Bausch</u>, 34 F.3d 1066, at *6 (citing <u>Davis v. Grusemeyer</u>, 996 F.2d 617, 625 (3d Cir. 1993)).

Under the facts as alleged in the Amended Complaint, there is no basis for equitable tolling beyond August 2008 (if at all), and Plaintiffs' MCPA and common law claims are time-barred.

> **B.   Plaintiffs Fail to Plead Their Fraud-Based Claims With Particularity, Fail to Plead Reasonable Reliance, And Fail to Identify Any Misrepresentations of Fact.**

After they entered into the loan in 2007, Plaintiffs claim that Household representatives subsequently made a number of misrepresentations relating to the status of the loan balance and adjustments; Plaintiffs' potential eligibility for reduced monthly payments; the existence of a class action settlement; and facts regarding the escrow account. (<u>See</u> Opp. at 17-18.)  As an initial matter, Plaintiffs' Amended Complaint fails to set forth with sufficient specificity the "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." <u>See</u> <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999).  For instance, with respect to the alleged misrepresentation concerning the class action Settlement Agreement in <u>Allen v. Decision One Mortgage, LLC</u>, U.S.D.C., D. Mass., No. 07-11669-GAO, Plaintiffs generally

- 9 -

claim that "Defendants falsely denied that the Boardleys were eligible as class members and also denied the existence of the Class Action Lawsuit and the settlement agreement.. . ." (A.C. ¶ 62.) This is not sufficient to plead common law fraud or a claim under the MCPA, as Plaintiffs fail to how the alleged statement was made (i.e., written or oral), fail to identify the alleged date of this purported representation, fail to identify which of the "Defendants" allegedly made the statement, and fail to disclose the identity of the person that allegedly made the statement. Similar problems exist with respect to the alleged misrepresentations of fact concerning Plaintiffs' escrow account – Plaintiffs simply do not identify the required "who, what, where, and when" facts concerning any alleged false statement made in connection with their escrow account.

In addition, a majority of these allegations do not identify any misrepresentations of ***past or existing facts***, and it is unclear what was false about the alleged statements at the time. For example, Plaintiffs claim that they were told they would receive lower payments after six months and be eligible for a refinance (A.C. ¶¶ 13, 15); that Plaintiffs would be offered a deferment plan (A.C. ¶ 18); that Plaintiffs' payments would be lowered (A.C. ¶ 22); and that their monthly mortgage payments would be reduced (A.C. ¶¶ 32-33). It appears that these statements were true. Plaintiffs were granted several deferments and temporary interest rate reductions (A.C. ¶¶ 18-22, 33), and they were informed that their account was in good standing as of August 2009 (A.C. ¶ 23). Although Plaintiffs contend that they were "***led to believe*** that their new regular monthly payment would be approximately $1,200 on a permanent basis," the only factual support for this claim is an alleged oral conversation with a representative named Chuck Leach, who "indicated that Defendants were offering and would be processing the Boardleys' loan to adjust to 2%." (A.C. ¶ 22.) Nowhere do Plaintiffs claim that Mr. Leach

promised that this alleged interest rate reduction would be permanent, rather than a temporary, reduction. It appears Plaintiffs simply misunderstood the nature of the offered deferment and temporary reduction and mistook these events for a permanent restructuring.

Finally, the alleged misrepresentations by Household's representatives, at most, constitute alleged breaches of promises to perform in the future. None of these alleged statements misrepresent any specific past or existing fact, but instead relate to anticipated future activities. As a general rule in Maryland, a claim for fraud will not lie where it is based on an alleged breach of a promise to render a performance in the future. Learning Works, Inc. v. Learning Annex, Inc., 830 F.2d 541, 546 (4th Cir. 1987). Although Maryland law does recognize a cause of action for fraud based upon a promise made with a present intention not to perform it, Sass v. Andrew, 832 A.2d 247, 264 (Md. App. 2003), no such allegations have been identified here.

## V. HOUSEHOLD DID NOT OWE PLAINTIFFS ANY DUTIES OTHER THAN AS SET FORTH BY STATUTE AND THE TERMS OF THE LOAN AGREEMENTS.

In an attempt to buttress their claims for negligence, negligent supervision and fraudulent concealment, Plaintiffs argue that these claims are based on the duty of "reasonable care," citing simply to the definition of the duty of care in the Restatement (Second) of Torts. (Opp. at 18.) Plaintiffs have not identified any case law to support their claim that a mortgage lender could be held liable for these types of duty-based tort claims under the circumstances presented here. To the contrary, several courts in Maryland and in this district have concluded that creditors do not owe borrowers any "tort duty" sufficient to support claims based on negligence or negligent misrepresentation and have declined to find any "special circumstances" in order to "transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement."

Spaulding v. Wells Fargo Bank, N.A., 920 F. Supp. 2d 614, 619-21 (D. Md. 2012) (citing Parker v. Columbia Bank, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992); see Green v. Wells Fargo Bank, N.A., 927 F. Supp. 2d 244, 253 (D. Md. 2013) (refusing to find that communications relating to request for loan modification created either enforceable contract with defendant, nor any nexus between parties sufficient to impose tort duty on lender).

Plaintiffs have failed to articulate any independent duty owed by Household, separate from its contractual obligations and perhaps from its duties to comply with the relevant statutes and regulations. Accordingly, Defendants owe no other duty to Plaintiffs, which would permit Plaintiffs to pursue negligence and fraudulent concealment claims. Each of these claims (Counts VI, VII and IX) should be dismissed for that reason.

## VI. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE *ALLEN* CLASS ACTION SETTLEMENT AGREEMENT.

Although Plaintiffs contend that they should have received certain benefits from a class action Settlement Agreement in the Allen case, they have not established that they were eligible to participate in the "foreclosure avoidance/foreclosure mitigation program or programs" ("FAP"), which was intended to "help borrowers experience serious financial hardship avoid foreclosure." (See Ex. B, Section 3.5(b) and (c).) As noted in Household's opening brief, Plaintiffs do not plead that they received any notice of intent to foreclose prior to June 30, 2011, in order to be eligible for that program. Rather, they did not receive any notice of intent to foreclose until later in 2012. (A.C. ¶ 53.)

Even more fundamentally, if it is true that Plaintiffs never received notice of either the class action or the Settlement Agreement, then Plaintiffs simply were not parties to the Settlement Agreement and have no basis upon which to assert a claim for breach of contract. It is hornbook law that, absent some recognized exception, only parties to a contract can enforce it.

Copiers Typewriters Calculators, Inc. v. Toshiba Corp., 576 F. Supp. 312, 322 (D.Md. 1983) (citing 2 Williston on Contracts §§ 273, 347, at 178–80, 793 (3d ed. 1959 & 1983 Supp.)). Here, Plaintiffs allege they were never given notice of the Settlement Agreement, did not receive any consideration under the Settlement Agreement, and are not bound by the Releases contained in the Settlement Agreement.  (See Opp. at 14.)  In effect, the Settlement Agreement is a legal nullity as to Plaintiffs.  They never gave up any rights pursuant to the Releases contained in the Settlement Agreement and never benefited from any of the loss mitigation or adjustable rate reset programs set forth in the Settlement Agreement.  In other words, based on the allegations in the Amended Complaint, Plaintiffs are not parties to the Settlement Agreement and have no standing to seek to enforce it.

Plaintiffs' final count alleging breach of contract should be dismissed with prejudice.[2]

## VII.   CONCLUSION

For the reasons set forth above, as well as in Household's opening brief, Plaintiffs have failed to plead any cognizable cause of action against Defendants, notwithstanding their second attempt to plead.  Accordingly, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety, with prejudice.

---

[2]  Finally, it is unclear how Plaintiffs could have sustained damages caused by Household's purported breach of the Settlement Agreement, even if they were a party to it.  They do not allege eligibility for any definable benefit, such as a cash payment, but instead simply assert they should have been provided the opportunity to participate in a loss mitigation process.  Nothing in the Settlement Agreement, however, provided any guarantee that participation in this program would necessarily avoid foreclosure proceedings or otherwise resolve delinquencies.  Thus, it is unclear how Plaintiffs have sustained any ascertainable injury due to failing to participate in the FAP established by the Settlement Agreement.

Respectfully submitted:


/s/ Christine M. Debevec
Andrew K. Stutzman (No. 29666)
Christine M. Debevec (No. 18828)
Zeenat A. Iqbal (No. 18267)
Stradley Ronon Stevens & Young, LLP
1250 Connecticut Avenue, N.W., Suite 500
Washington, DC 20036

*Attorneys for Defendants,*
*Household Finance Corporation, III and*
*HSBC Holdings, Inc., PLC*

## **CERTIFICATE OF SERVICE**

    I, Christine M. Debevec, hereby certify that the foregoing Reply Brief was filed electronically through the Court's ECF system and was served electronically through the Court's ECF system upon:

    Tyler Jay King, Esq.
    1407 Nicholson Street, NW,
    Washington, DC  20011
    Tel: (202) 436 2641
    Fax: (202)391 0679
    Email: tyler@tylerkinglaw.com

    *Attorney for Plaintiffs,*
    *Eurkert and Senta Boardley*


        /s/ Christine M. Debevec
        Christine M. Debevec

Date:  January 10, 2014

# 1904420  v. 1